### MARY H. CAUDLE

#### v.

### WILLIAM MURPHY.

1. SUBROGATION—*under deed of trust.* Where a third person pays a debt which is secured by mortgage, at the request of the mortgagor, but takes the note and mortgage as a security for the money thus advanced, he will, in equity, be entitled to be subrogated to the rights of the original creditor, and to have the property sold under the power in the mortgage or trust deed, in the same manner the mortgagee might have done in the absence of payment to him.

2. DEED OF TRUST—*setting aside sale under, on ground of payment.* Where a husband, after giving a deed of trust, conveys the property to another in trust for his wife, and makes an arrangement with a brother for the payment of the debt, when he absconds to avoid a criminal prosecution, and the property is afterwards sold by the trustee, and the wife receives the surplus of the proceeds of the sale, but some seven years afterwards files her bill to have the sale set aside on the ground of payment of the debt by the brother of her husband before the sale, alleging that she did not know of the payment until a

short time before filing her bill, the proof must be clear that the debt was paid and the lien extinguished, and exclude every reasonable probability that the note and trust deed were taken by the brother at the time as security for the money advanced by him, in order to justify the court in setting aside the sale as to an innocent purchaser, after such a lapse of time.

APPEAL from the Circuit Court of Randolph county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. HOOD & GORDON, for the appellant.

Mr. J. PERRY JOHNSON, and Mr. SILAS L. BRYAN, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

On the 20th of February, 1865, Gregory Caudle, being the owner of the tract of land mentioned in the bill, united with his wife, the complainant in the court below, (and the appellant here,) in the execution of a trust deed, conveying this property to Johnson to secure the payment of $146.70, which Gregory Caudle owed to Borders. This deed was duly recorded.

On the 19th of September, 1868, Johnson, having duly advertised the property, sold it by virtue of the power in this trust deed, and Murphy, defendant in the court below, (and appellee here,) became the purchaser at $300, received a deed from Johnson, and entered into possession, which he has held ever since. The amount paid to Johnson exceeded the amount of the mortgage debt and costs by $140.

On the 5th of October, 1865, (some six months after the execution of this trust deed to Johnson,) Gregory Caudle, for a valuable consideration, conveyed this tract of land to William Caudle, in trust for the appellant, which deed was at that time recorded.

After Murphy had paid the purchase money to Johnson, the trustee, appellant claimed that the surplus of the purchase money from Murphy (after paying the mortgage debt and costs) belonged to her, (by virtue of this deed, made by her

23—89 ILL.

husband on the 5th of October, 1865, to William Caudle, in trust for her,) and the $140 was, on her demand, paid to and accepted by her.

This bill is filed against Murphy, the purchaser, (at the sale made by the trustee,) offering to refund the $140, and asking to have that sale, and the conveyance to Murphy, set aside upon the ground, as alleged, that the mortgage debt had been paid before the sale made under the trust deed.    The bill also charges fraud in the defendant, but there is no proof tending to support that allegation.

The answer denies the payment and extinguishment of the mortgage debt, and claims that the defendant was a *bona fide* purchaser.    On the hearing the circuit court dismissed the bill, and the complainant appeals.

It seems to be well established, by the proof, that some months before the sale made by virtue of the trust deed, the amount of the mortgage debt and interest was paid to Borders, but the proof is not clear as to the character of the payment. The evidence tends to show that shortly before that time Gregory Caudle, the husband of appellant, was accused of crime, and gave bail and absconded, and that one "Ritchie" was one of his sureties; that before going away, Gregory Caudle turned over or transferred to Ellison Caudle, his brother, a quantity of wheat, hogs and sheep, with a view of providing for the payment of his debts, and especially for the payment of this mortgage debt to Borders.

The terms and conditions upon which this property was turned over to Ellison Caudle, are not very perspicuously stated by him.    In one part of his testimony he says that if he paid this Borders debt, he was to have this personal property.

Shortly before the payment to Borders of this mortgage debt and interest, being apprehensive that he would proceed to sell this land by virtue of the mortgage, Ellison Caudle, being ill at the time, sent William Caudle, his brother, to Borders to make the payment and take possession of the trust

deed and note. This, William Caudle did, and brought the trust deed and note and placed it in the hands of Ellison Caudle. Ellison Caudle testifies, in this case, that, through William, he "paid the note to James J. Borders, as the agent of Gregory Caudle." In another place he says, "I was to keep the deed of trust and note until I got my money back." Again he says, "I paid it with my own money. It was advanced by me on the wheat and other property belonging to Gregory Caudle." And again he says, "I was authorized by Gregory Caudle to pay this debt to Borders. He told me I should have the wheat and other property if I would pay it." He further states that he afterwards sold this personal property and received $344 for it, and, after paying the expenses of converting this personal property into money, he says he paid the balance to William Ritchie, and "that William Ritchie told me that my brother was in trouble, and let him (Ritchie) have it, and that I would get my money when the land was sold." In another place he says, "My brother Gregory told me to give it to Ritchie to get him out of trouble."

After the proceeds of this personal property had been paid over to Ritchie, the trust deed and note, which had been given to Borders, (and which had been passed from Borders through the hands of William Caudle, to the possession of Ellison Caudle,) was sent back to Borders by Ellison Caudle (who was in ill health at the time, and sent it by his wife, as a messenger,) with the request to have the property sold under it. Borders accordingly sent the deed of trust to Johnson, the trustee, with directions to proceed, and Johnson made the sale as above stated.

This bill was not filed until the March term, 1876, more than seven years after the sale, and many years after the complainant had demanded and received the share of the purchase money which she claimed. She excuses this delay by charging in her bill, and testifying at the trial, that, until a very short time before the filing of the bill, she had no knowledge or information that this mortgage debt had ever been paid, or

otherwise satisfied or discharged, except by the sale under the trust deed.

If it be true that Ellison Caudle, at the time when he paid the money, through his brother William, to Borders, received the note and mortgage as a security that his money thus advanced for his brother should be refunded, he was entitled, in equity, to be subrogated to the rights of Borders, the original creditor, and to have the property sold under the trust deed in the same manner that Borders might have done, in the absence of the payments to Borders, and this, from a part of Ellison Caudle's testimony, seems to have been the true state of the case. It is true, that, in other parts of his testimony, he says that he paid this money as an advance upon the personal property in his hands, and in another, that the agreement between his brother Gregory and himself was, that if he paid this mortgage debt he should own the personal property.

These different statements can not well be reconciled with each other. In view of the fact that Murphy was a *bona fide* purchaser at a public sale, and in view of the long delay of complainant in discovering and asserting her alleged rights, her bill ought not to be sustained, except upon clear proof that the payment was made as an extinguishment of the mortgage debt. It ought to exclude distinctly and definitely every reasonable probability that the note and mortgage were taken at the time as security by Ellison Caudle. This, the proof fails to do, and we think the circuit court did right in dismissing appellant's bill.

*Decree affirmed.*