KALSCHEUER, Respondent, *v.* UPTON ET AL., Appellants.

1. **Subrogation, Right of — When Allowed — Mortgages — Redemption.**

A., the owner of certain land on which there were two mortgages, conveyed it with covenants of warranty to B., who, before the delivery of the deed on representing he was the owner, mortgaged it to C. and D. and paid off the prior liens though it did not appear they were due. These mortgages were immediately recorded. Afterward, B., on the delivery of the deed, executed to A. a purchase-money mortgage, he having no knowledge of C. and D.'s mortgages. The deed and mortgage were at once recorded. Under § 1714, C. C., providing that "every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed," *held*, as against the purchase-money mortgage, C. and D. were entitled to be subrogated to the rights of the prior lien-holders.

2. **Same — Time of Redemption.**

The provision in this section as to paying the lien " at any time after the claim is due," was made for the benefit of the lien-holder, and no one but him can object to its being paid before it is due.

(Argued February 11, 1889; determined and opinion filed October 10, 1889.)

APPEAL from district court, Spink county; Hon. JAMES SPENCER, Judge.

*Winsor & Kittredge*, for appellants.

The only question in the case is, has a junior incumbrancer the right to pay off a superior lien and be subrogated to the rights of

its holder? Section 1715, C. C., gives this right. It is not claimed but that the deed from the Kalscheuers to Susanna Keller and the mortgage from the Kellers to John Kalscheuer were all parts of one transaction, and it is admitted that any mortgage given by the Kellers prior to that time would be inferior to the purchase-money mortgage to respondent. But it is insisted that a mortgage given prior to this time would be, so far as money had been advanced upon it, a mortgage immediately secondary to the one for the purchase-money. § 1727, C. C. The liens then would be as follows: The $1,200 mortgage to Smith; the mortgage of $189 to Miller; the mortgage of $2,350 to Kalscheuer, and then the mortgage from Kellers to Upton, nominally for $2,000, but at that time only for the amount which had actually been advanced, about $500. This would make the Smith and Miller mortgages senior to the Kalscheuer mortgage, and all of these three senior to the Upton mortgage, but there can be no pretense that the Upton mortgage was not a lien for the amount which had been advanced by him subject to these three prior liens. Upton and Clement then were no mere strangers to this title, having no rights or liens upon it. They were junior mortgagees with their liens inferior to the others. They had the right to pay off any or all of these incumbrances which were superior to their own, and to be subrogated to the rights of these superior mortgagees. In accordance with this right they did pay off the two mortgages, which were the first liens upon the premises. It is true they were under no personal obligation to pay the mortgages, but the estate in which they had an interest was liable. A junior incumbrancer who pays a prior lien is thereby subrogated to the security. Ellsworth v. Lockwood, 42 N. Y. 89, 96; § 1715, C. C.; Jones, Mortg., §§ 874, 876, 877. See, also, Gans v. Thiems, 93 N. Y. 225; Hayes v. Ward, 4 Johns. Ch. 123; Wallen's Appeal, 5 Barr, 103; Knyer v. Knyer, 6 Watts, 221; Bispham, Equity, §§ 336, 338; Cheesborough v. Millard, 1 Johns. Ch. 412.

*H. C. & T. J. Walsh*, for respondent.

Appellants must bring themselves within sections 1714, 1715, C. C. They are unable to do this for a number of reasons: There is no allegation, proof, or finding that the claim paid was due.

They did not pay it off to protect their own interest, that interest was in no danger from the prior liens they discharged.

It is contended a junior mortgagee may pay off a prior mortgage not yet due, and be subrogated to the rights of the mortgagee therein. The code discloses no such rule, and a careful examination of the authorities fails to reveal it. The statute merely gives expression to the equity rule. Subrogation, unless perhaps under peculiar circumstances, can arise only on redemption, and there can be no redemption until after forfeiture. Ellsworth v. Lockwood, 42 N. Y. 89, 97.

Appellants are mere volunteers. The fact that their money went to pay off prior liens gives them no equity. Calbaugh v. Byerly, 7 Gill (Md.), 354; Downer v. Miller, 15 Wis. 612; Watson v. Wilcox, 39 id. 643; Gadsden v. Brown, 1 Speer, 41; Banta v. Garno, 1 Sandf. Ch. 384; Wilkes v. Harper, 1 N. Y. 586; Douglass v. Fagg, 8 Leigh, 588; Hough v. Insurance Co., 57 Ill. 318; Small v. Stagg, 95 id. 39.

Further, at the time the original mortgage was paid off, respondent's mortgage was of record, and appellants must be deemed to have had notice of it. Nat. Bank v. Thompson, 34 N. W. Rep. 184; Mather v. Jenswold, 32 id. 512; Goodyear v. Goodyear, 33 id. 142; Banta v. Garno, 1 Sandf. Ch. 383.

Rose, J. The facts in this case, as shown by the findings of the referee, the agreed statement of facts, and exhibits are as follows: On July 19, 1886, John Kalscheuer and Anna Mary Kalscheuer were and are now husband and wife. At that time John Kalscheuer was the owner of the S. E. ¼ of section 9, township 117 N., of range 62 W. of the fifth P. M., and his wife was the owner of the S. W. ¼ of the same section. On October 1, 1884, Kalscheuer and his wife executed and delivered unto John W. Smith, trustee for John H. Miller, a trust deed for $1,200, and a mortgage to John H. Miller for $189, on the above-described tract of land, both of which instruments were recorded on October 6, 1884. On June 22, 1886, Kalscheuer and his wife executed a warranty deed to Susanna Keller for the above-mentioned premises, subject to the trust deed to Smith, trustee, which Susanna Keller assumed and agreed to pay; but the deed was not delivered

until July 19, 1886, and it was recorded on July 21, 1886, and at the same time, to-wit, July 21, 1886, and as part of the same transaction, Susanna Keller and her husband, Jacob Keller, executed and delivered unto Kalscheuer a mortgage on the same premises for the sum of $2,350.33, subject to the trust deed to Smith, trustee, which was given to secure the payment of that part of the purchase-price remaining unpaid. The consideration mentioned in the deed is $3,500. The deed from Kalscheuer to Keller, and the mortgage from Kellers to Kalscheuer, were recorded simultaneously on July 21, 1886. Prior to the delivery of the deed from Kalscheuer to Keller, and on or about June 21, 1886, Susanna Keller and her husband executed and delivered to Hiram D Upton a mortgage upon the same premises for $2,000, to secure a loan of that amount, evidenced by a note of even date with the mortgage, and at the same time they executed and delivered unto Foster R. Clement a mortgage on the same premises to secure a note for $402.25, it being a part of the interest on the Upton note, both of which mortgages were recorded on the 23d day of June, 1886. At the time Upton and Clement made this loan to Susanna Keller she represented to them that she was the owner in fee of the said premises, and that they were free from incumbrance, excepting the trust deed to Smith, trustee, for $1,200, and that she desired to pay it off with a part of the proceeds of the loan. Upton and Clement, relying upon these statements, made the loan to her, and on June 22, 1886, and prior to the execution and delivery of the mortgage to Kalscheuer, they paid her $500, and on August 3, 1886, they paid $1,412 for a release of the trust deed to Smith, trustee, and the balance of the loan they paid out for sundry purposes to different parties, for insurance, recording fees, abstract of title, and expenses. Upton and Clement, at the time the loan was made, had no knowledge of the existence of the trust deed to Smith, trustee, and the mortgage to Miller, and fully believed that Susanna Keller had an absolute and perfect title to the premises, and they made the loan in good faith. Neither did Kalscheuer have any knowledge, prior to January 1, 1887, of the existence of any mortgage upon the premises other than that of the trust deed of $1,200 to Smith, trustee. When the note of Kellers to Kalscheuer for $2,350.33

became due, and it was not paid, Kalscheuer commenced fore-closure proceedings, making Upton and Clement defendants.

The case was referred. The referee found the facts above given. The court confirmed the report of the referee, and found as con-clusions of law, so far as relates to this case:  (1) That the Kalscheuer mortgage was given to secure the payment of the pur-chase-price of the S. $\frac{1}{2}$ of section 9, township 117 N., of range 62 W. of the fifth P. M.; (2) that the deed from the Kalscheuers to Susanna Keller, conveying the said premises, and the mort-gage from Susanna Keller and husband to Kalscheuer, were ex-ecuted, delivered, and recorded simultaneously ; (3) that Kalscheuer had no notice, actual or constructive, before January 1, 1887, of the existence of either the mortgage to Upton or the mortgage to Clement; (4) that the lien of the mortgages of Upton and Cle-ment is inferior and subordinate to the lien of Kalscheuer's mort-gage — and rendered judgment in accordance with the above con-clusions of law.

The defendants, Upton and Clement, appealed from the judg-ment rendered, and assign as error the following:  "(1) That the findings of the referee and the agreed statement of facts do not sustain the conclusions of law.  (2) That the court erred in de-claring so much of the money paid by defendant Upton in satisfaction of the $1,200 and $189 mortgages, together with ac-crued interest, which was on the land prior to the sale of the land by Kalscheuer to Keller, inferior to the mortgage from Keller to Kalscheuer, and refusing to permit Upton to be subrogated to plaintiff [the prior lien-holders] for that amount."   There is no dispute as to the foregoing facts, as they are admitted by both ap-pellants and respondent.

The only question submitted to this court for determination is whether Upton and Clement are entitled to be subrogated to the rights of the prior lien-holders, Smith, trustee, and Miller, or, in other words, are they entitled to an equitable assignment of their liens.

The respondent maintains in his argument that Upton and Clement should not be subrogated for the following reasons:  (1) Because there is no allegation, proof, or finding by the referee that the mortgages paid by the appellants were due when paid.

(2) The appellants did not pay the said mortgages to protect their own interest. That their interest was in no danger from the prior liens which they discharged. (3) The appellants were mere volunteers in paying off the prior liens. (4) The appellants must be deemed to have had notice of the existence of respondent's mortgage. (5) That it is impossible to determine the amount for which they should have priority.

On the other hand, appellants urge in their argument that they should be subrogated for the reason that they paid the prior liens at the instance of Susanna Keller, who was primarily liable for their payment; that they had an interest in the premises, and sustained such relation, both to the owner and to the premises, as to entitle them to pay the liens, in order to protect their own interest; and that they were not mere strangers or volunteers, having no interest whatever in the premises, and that they are entitled to be subrogated, under the provisions of section 1715 of the Civil Code, and by the general principles of equity.

The first point made by respondent we think is not well taken. Section 1714 of the Civil Code reads as follows: "Every person having an interest in property subject to a lien has a right to redeem it from the lien at any time after the claim is due, and before the right of redemption is foreclosed."

We think that the condition expressed in the words "at any time after claim is due" was enacted for the benefit of the prior lien-holders, which right they could waive, if they chose to do so, by consenting to accept payment of their liens before they were due. No one except them could object to their liens being paid before they were due, and they do not complain. There is no charge that their liens were not valid; in fact it is admitted that they were valid. The abstract of title shows that their liens were paid and released of record.

The prior lien-holders must have consented to receive payment of their liens before they were due and paid, otherwise their release could not have been obtained, and the right of redemption had not been foreclosed; hence we think respondent has no reason to complain of the transaction. Fears v. Albea, (Tex.) 6 S. W. Rep. 286.

We think the second point made by respondent also is not well taken.

When Susanna Keller received her deed and title to the premises from Kalscheuer on July 19, 1886, such title inured to Upton and Clement as security for the $500 which they had paid to her under their mortgage, then executed and recorded, under the provisions of that portion of section 1727 of our Civil Code which reads as follows: "Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in like manner as if acquired before the execution."

Upton and Clement then became junior lien-holders to Smith, trustee, Miller, and Kalscheuer for at least the sum of $500.

They became junior lien-holders to Smith, trustee, and Miller, because the mortgages of the former were given and recorded subsequent to the mortgages of the latter; and the mortgages of Upton and Clement were junior and inferior to that of Kalscheuer, although they were given and recorded prior to his, because Kalscheuer's mortgage was given for a part of the purchase-price under the provisions of section 1712 of our Civil Code, which reads as follows: "A mortgage given for the price of real property at the time of its conveyance has priority over all other liens created against the purchaser, subject to the operation of the recording laws."

Upton and Clement then being junior and inferior lien-holders to Smith, trustee, and Miller, they had a right to redeem from them under the provisions of section 1715 of our Civil Code, which reads as follows: " One who has a lien inferior to another upon the same property has a right — (1) to redeem the property in the same manner as its owner might from the superior lien; and (2) to be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests, upon satisfying the claim secured thereby."

That it was necessary for Upton and Clement to redeem from Smith, trustee, and Miller in order to protect their interest is quite obvious, and it is practically admitted by respondent, for his counsel, in their argument, say that Kalscheuer's security for the payment of his mortgage of $2,350.33 was always inadequate.

Less, then, would appellants' security be, and greater would the necessity be to protect their lien.

That Upton and Clement satisfied the liens of Smith, trustee, and Miller is admitted. No good reason can be imputed to Upton and Clement for paying the liens, other than that it was to protect their interest, and respondent should not complain of their having done so unless they paid more for the prior liens than was legally due thereon, and there is no claim nor proof that such was the case.

Nor do we think that the third point made by respondent is good. We think that it is apparent from the facts in the case that Upton and Clement had a *bona fide* interest in the premises which they had a right to protect, and that they were not mere strangers, meddlers, or volunteers to the premises in paying the prior liens.

With respect to the fourth point made by respondent we think it was immaterial whether Upton and Clement had notice of Kalscheuer's mortgage. Such notice would not affect their right to redeem and be subrogated if such they had.

It is admitted that the statement of facts made in the seventh paragraph of appellant's answer is true, and it is therein stated that appellants paid $1,412 for the prior liens, and we think they are entitled to be subrogated for that amount, unless more was paid for the prior liens than was due thereon, and there is no charge nor proof that such was the case, which disposes of respondent's fifth and last point made.

Sections 1714 and 1715, cited above, declare the general doctrine of equity held by the courts of our country in respect to subrogation or equitable assignment in cases like the one here presented. Mr. Pomeroy, in his work on Equity Jurisprudence, says : " Equity does not admit the doctrine of equitable assignment in favor of every person who pays off a mortgage. Such relations must exist toward the mortgaged premises, or with the other parties, that the payment is not a purely voluntary act, but is an equitably necessary or proper means of securing the interests of the one making it from possible loss or injury. The payment must be made by or on behalf of a person who had some interest in the premises, or some claim against other parties, which he is entitled in equity

to have protected and secured. A mere stranger, therefore, who pays off a mortgage as a purely voluntary act, can never be an equitable assignee. In general, when any person having a subsequent interest in the premises, and who is, therefore, entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor, primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit. He is subrogated to the rights of the mortgage to the extent necessary for his own equitable protection. The doctrine is also justly extended by analogy to one who, having no previous interests, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party, and for his benefit. Such a person is in no true sense a mere stranger and volunteer." 3 Pom. Eq. Jur., § 1212, and cases cited therein; 1 Jones, Mort., § 877, and cases cited therein; Boone, Mort., §§ 136, 137, and many cases cited therein; Mosier's Appeal, 56 Pa. St. 76; Sanford v. McLean, 3 Paige, 117.

In the case of Fievel v. Zuber, 67 Tex. 275, 3 S. W. Rep. 273, the court say: "There are numerous decisions which recognize the doctrine that if a third party pay the entire debt in pursuance of an agreement between him and the debtor, upon his doing so he shall be subrogated to the creditor's rights, the agreement will be given effect, and such third party will stand in the place of the creditors as to all persons interested in the property or the security. * * * We have not found the rule otherwise except in the state of Louisiana, where the subject is governed by statute." See cases cited therein; also Crippen v. Chappel (Kan.), 11 Pac. Rep. 453, and cases cited; McNeil v. Miller (W. Va.), 2 S. E. Rep. 335, and cases cited; Yaple v. Stephens (Kan.), 14 Pac. Rep. 222, and cases cited; Rappanier v. Bannon (Md.), 8 Atl. Rep. 555; Muir v. Berkshire, 52 Ind. 149; Caudle v. Murphy, 89 Ill. 352; Young v. Morgan, id. 199; Bank v. Cheeney, 87 id. 602, 615. The case of Edwards v. Davenport, reported in 20 Fed. Rep. 756, holds the doctrine that a party who advances money to another that is used to discharge a valid pre-existing lien on real estate, if not a mere volunteer, is entitled by subroga-

tion to all the remedies which the original lien-holder possessed as against the property.

In the case of Fievel v. Zuber, *supra*, reported in 3 S. W. Rep. 273, it is held that when a debt is discharged under an agreement with the debtor, or under circumstances from which an agreement may be implied, the note shall be held until the money is repaid, and this although the creditor is not a party to the agreement the doctrine of subrogation is applied. Lockwood v. Marsh, 3 Nev. 138.

In view of all the facts in the case, we think that appellants are entitled to be subrogated to the rights of Smith, trustee, and Miller, the prior lien-holders, to the extent of the sum which they paid for the release of the prior liens, and that the court below erred in deciding that they were not entitled to be subrogated to their rights.

The case is, therefore, remanded to the court below, with direction that the judgment there rendered be modified in accordance with this opinion. All the justices concurring except Justice SPENCER, who did not sit in the case.