BECK, Appellant, v. ELLIOTT, Respondent.

(220 N. W. 448.)

(File No. 5846.   Opinion filed July 7, 1928.)

*W. A. Robertson,* of Plattsmouth, Neb., and *Jones, Matthews & Fitzpatrick,* of Sioux Falls, for Appellant.

*Frank R. Fisher,* of Miller, for Respondent.

MISER, C. In the view that we take of this case, the following facts found by the trial court are all that need be stated. On April 5, 1920, Joseph Elliott, the then owner of record of the S. ½ of a certain section 8 in Tripp county, S. D., delivered to Ella McHenry a warranty deed theretofore executed by himself and wife, for an agreed consideration therein stated of $30,400. At the time of the delivery of said deed by Joseph Elliott to Ella McHenry, and as part of the same transaction, Ella McHenry executed and delivered to Aaron Elliott, respondent herein, a brother of the said Joseph Elliott, one note for $10,500 and another note for $3,500, each dated March 1, 1920, and due March 1, 1925, with interest at 6 per cent per annum from date. The note for $10,500 was secured by a first mortgage on the S. E. ¼ of said section 8; and the note for $3,500 was secured by a first mortgage on the S. W. ¼ of said section 8. Said notes and mortgages were executed by the said Ella McHenry and delivered to Aaron Elliott at the request of Joseph Elliott, and represented the unpaid balance of the purchase price. Delivery of this deed and these mortgages were in pursuance of agreements entered into as follows: On July 9, 1919, Joseph Elliott, being then the owner in fee and of record of the S. ½ of said section, entered into a contract in writing with one Ella McHenry, the material parts of which contract are as follows:

"If [Ella McHenry] shall make the payments hereinafter mentioned, Joseph Elliott hereby covenants and agrees to convey to Ella McHenry in fee simple, clear of all encumbrances whatever, by a good and sufficient warranty deed [said S. ½ of section 8]; and Ella McHenry covenants and agrees to pay to Joseph Elliott the sum of $30,400 in manner following: $2,000 at or before the execution of this contract; $14,400 on February 20, 1920; $14,000 on the first day of March, 1925, with interest at the rate of 6% per annum after March 1, 1920; that all covenants and agreements shall extend to the heirs and assigns of the respective parties."

This contract was not recorded. In September, 1919, Joseph Elliott, the vendor, agreed with Aaron Elliott, respondent herein, to turn over to Aaron the proceeds of the sale to McHenry of the Tripp county land as part consideration for certain Hyde county lands then owned by Aaron. This contract was not recorded. Ella McHenry paid the $2,000 on July 9, 1919, but did not make the payment of $14,400 on February 20, 1920, as provided by the contract. The payment of $14,400 by McHenry was on April 5, 1920, when Joseph, Aaron and Ella McHenry met, and the deed, notes, and mortgages for $14,000 and checks for $14,400 were delivered as above stated; the notes and mortgages for $14,000 and checks for $14,400 being executed and delivered to Aaron.

Appellant acquired his interest in half of the land heretofore described, to wit, the S. E. ¼ of said section 8, as follows: On July 9, 1919, a contract was entered into between McHenry and appellant Beck, in which McHenry agreed to convey to appellant the S. E. ¼ of said land. On the same day, a like contract to convey the S. W. ¼ was made by the said McHenry to appellant's brother-in-law, Ehrhardt. Both these contracts were made by filling out a form identical with that used in the contract of the same date between Joseph and McHenry. It would appear that, on July 9, 1919, McHenry had contracted to sell to appellant the S. E. ¼ and to Ehrhardt the S. W. ¼ and on the same day contracted to buy the entire half section from Joseph for $6,000 less than she had contracted to sell it for.

On March 3, 1920, appellant paid to McHenry the full purchase price of the S. E. ¼ and received from McHenry a deed executed by her with full covenants of warranty. A like deed covering the S. W. ¼ was delivered on the same day by McHenry to Ehrhardt. At the time of the delivery of such deeds Joseph was the owner of record of both quarter sections and had received only $2,000 on the purchase price thereof under his contract with McHenry; appellant had made no examination of the title nor of the records, relying upon McHenry's statement that she had a good and merchantable title thereto; and, when the deed was delivered to him, appellant left it with McHenry to be recorded.

In the view we take of this case, we do not deem it material that the deed from McHenry to Ehrhardt was recorded on March 13th, the deed from Joseph to McHenry on April 6th, the deed

from McHenry to appellant on April 10th, or the mortgages from McHenry to respondent on April 24th; nor do we deem it material that appellant did not discover until in December, 1921, that McHenry did not have title to the land at the time of the delivery of her deed to him, nor that she later gave to appellant her note for $10,500 and her promise to right the wrong, nor that, in October, 1922, when respondent discovered that she had taken from Ehrhardt a mortgage of $3,500 on the S. W. ¼, he obtained an assignment of such mortgage, which mortgage having been thereafter paid, both the $3,500 Ehrhardt mortgage to McHenry and the $3,500 mortgage of McHenry to respondent were by respondent satisfied.

None of the contracts for deed hereinbefore mentioned were ever recorded. Neither Joseph Elliott nor respondent Aaron Elliott had, on April 5th, any actual knowledge of the contract for deed between McHenry and appellant, nor of the deed given by McHenry to appellant, for over a year after its delivery. Joseph and Aaron were told by McHenry on April 5th that she had not sold the land, but had prospective buyers for each quarter section; that the party who expected to buy the S. E. ¼ wanted to pay all cash provided he sold certain cattle; and the buyer of the S.W.¼ wanted to carry back a $3,500 mortgage; hence her desire to have a mortgage for that amount on that quarter section. There is neither allegation nor proof of fraud on the part of either appellant, respondent, or Joseph Elliott, nor actual knowledge of any fact which would affect the issues; the fraud being perpetrated by and the facts known to McHenry only.

Appellant brought this action to quiet title to the S. E. ¼ against respondent. Respondent, in his answer, set out his mortgage as aforesaid; and, default having been made in the payment of the interest thereon, asked for foreclosure of the same. Upon trial, judgment was entered in favor of respondent and for the foreclosure of the mortgage. From this judgment and the order denying the motion for a new trial, this appeal is taken.

Numerous question are raised by the assignments of error. We are of the opinion, however, that the mortgage given by McHenry to respondent constituted a purchase-money mortgage; and this, in the absence of fraud or of knowledge, either actual or constructive, gave respondent's mortgage priority over appellant's deed.

Section 1537, R. C. 1919, is as follows:

"A mortgage given for the price of real property, at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording law."

This section is identical with section 2898, Cal. Civ. Code, concerning which the California court, in Van Loben Sels v. Bunnell, 120 Cal. 680, 53 P. 266, says:

"This is but the recognition of an equitable principle which was early declared. It came into existence at a time when title, and not a mere lien, passed to the mortgagee by virtue of the mortgage. It was recognized that the vendor who had parted with his land, and had taken to secure part payment of the purchase money a mortgage upon that same land, should not suffer an impairment of his security, and perhaps an absolute loss of a large part of the purchase price, by other rights such as dower, or the right of a judgment creditor attaching to the property in the brief time during which title was held by the vendee. * * * This equitable principle, where recognized, was frequently extended beyond the vendor in whose interest it was originally formulated, and made applicable to a third person who had furnished the whole or part of the money used in the purchase of the land."

To the same effect, see Wiltsie on Mortgage Foreclosure (4th Ed.) § 271, 41 C. J. 531, § 472, and also Jones on Mortgages (7th Ed.) vol. 1, pp. 703-705, wherein it is said:

"It has been said that the lien of a purchase money mortgage is entitled to the highest consideration in a court of equity. Thus a purchase money mortgage takes precedence of a prior mortgage covering after-acquired property, given by the same mortgagor before he took title. If a mortgage is in fact given for purchase money, the fact need not be recited or appear on its face, to give it priority. But the contrary fact may be proved against it, as well as fraud, which would postpone it to other liens. The purchase money mortgage executed and recorded contemporaneously with the title deed, has preference over a prior mortgage given by the purchaser to a creditor and recorded before the title deed, since the purchaser had not title when he executed the first mortgage. The delivery of the deed and execution of the purchase money mortgage being concurrent, the title did not rest in the purchaser for any appreciable time, but revested immediately under the purchase

money mortgage; for concurrent acts are in law but one act." Section 468, Jones on Mortgage (7th Ed.) vol. 1, pp. 703-705.

Inasmuch as, in the instant case, the mortgage was not executed to the vendor of the real estate, but was, at the request of the vendor and owner of record, executed and delivered to respondent, the following language of the Florida court is especially apt:

"A mortgage to secure the purchase money, given by a purchaser of land simultaneously with the conveyance of the land to him, does not necessarily lose the character of a purchase-money mortgage merely because taken in the name of a person other than the vendor, by the vendor's procurement." Cheves v. First Nat. Bank, 79 Fla. 34, 41, 83 So. 870, 872.

To the same effect is Jones on Mortgages, § 472, which adds:

"When all the acts of the parties appear to be parts of one transaction, in its legal effect it is the same as though the purchaser had executed a mortgage to the vendor for the purchase money, and he had assigned it to the party advancing the money."

The authorities cited in the opinions and texts hereinbefore quoted and referred to are numerous; moreover, Kalscheuer v. Upton, 6 Dak. 449, 43 N. W. 816, furnishes a territorial precedent. We are therefore of the opinion that the execution and delivery by McHenry to respondent of the mortgage in suit, to secure the unpaid balance of the purchase price of the lands so mortgaged, being contemporaneous with the acquirement of the legal title by the mortgagor and part of the same transaction, made of it a purchase-money mortgage within the intent of section 1537, R. C. 1919.

But appellant calls attention to the fact that respondent's mortgage was not recorded until April 24th. The delay in such recording caused no harm to appellant, for appellant had received his deed and parted with the purchase price 33 days before respondent had received his mortgage and not subsequent thereto. Appellant also calls attention to the fact that the deed to Ehrhardt was recorded prior to respondent receiving his mortgage. Disregarding the fact that the deed to Ehrhardt involved the S. W. ¼, whereas respondent's mortgage on appellant's land involves the S. E. ¼, we find the answer to appellant's contention in the following from Kalscheuer v. Upton, supra:

"The mortgages of Upton and Clement were junior and inferior to that of Kalscheuer, although they were given and recorded prior to his, because Kalscheuer's mortgage was given for a part of the purchase price under the provisions of section 1712 of our Civil Code, which reads as follows: 'A mortgage given for the price of real property at the time of its conveyance has priority over all other liens created against the purchaser, subject to the operation of the recording laws.'"

The judgment and order appealed from are affirmed.

BURCH, P. J., disqualified and not sitting.

POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.

BROWN, J., concurs in result.