# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MORTON v. DILLON.

### MARCH 15th, 1894.

SURETY—*Creditor—Collateral—Subrogation.*—A surety having paid the cred-
itor a part of the debt, may recover from him the amount paid, where
the creditor has, upon receiving from principal debtor the balance of the
debt, surrendered to him without the knowledge or consent of the surety,
the collateral security deposited with the creditor by the principal debtor.

Appeal from decree of circuit court of Prince Edward county,
rendered September 1st, 1891, in a chancery cause wherein the
appellee, James M. Dillon, was complainant, and William
Morton, Wm. T. Cunningham, Samuel N. Cunningham, and
T. Henry Glenn were defendants. The decree being adverse
to the defendant, Wm. Morton, he appealed. Opinion states
the case.

*W. W. Henry*, for appellant.

*Leake & Carter* and *J. P. Fitzgerald*, for appellees.

LACY, J., delivered the opinion of the court.

The case, as disclosed by the record, is as follows: The bill
was filed in December, 1887, by the appellee, against the ap-
pellant, William Morton, and the other defendants, alleging
that on July 10, 1884, William T. Cunningham and the appel-
lee, James M. Dillon, executed a bond to the appellant, Wil-

liam Morton, payable January 10, 1886, the consideration of
which was money lent William T. Cunningham by said Mor-
ton, amounting to $700, which was the sum for which the bond
was given, and the said Dillon was the surety on the said bond.
That the said Dillon became the surety on the said bond only
on the condition that William T. Cunningham should give him
counter security by giving to said Dillon the bond of Samuel
N. Cunningham, payable to William T. Cunningham, with T.
Henry Glenn as surety thereon, in the sum of $500, but that,
in violation of his promise, the said William T. assigned this
bond to Morton, taking from him an agreement that this bond
was to be held by the said Morton as collateral security only
for the payment of the bond of $700 mentioned above, and,
when the said bond was fully paid, then the said collateral was
to be returned.   On September 7, 1886, W. T. Cunningham
and said Dillon had confessed judgment on the said $700 bond
in favor of Morton; on October 15, 1886, Dillon paid $200 on
the said judgment; and on October 18, 1886, Morton sued out
an execution on the said judgment, which was levied on Dil-
lon's property, whereupon he gave a forthcoming bond in the
penalty of $1,543 02; and shortly after there was a judgment
rendered on this forthcoming bond, when Dillon paid $540 on
the same, leaving $35 36 costs.   And Dillon notified Morton
that he claimed the said $500 bond as his property, so far as
necessary to indemnify him for the money he had paid as su-
rety for W. T. Cunningham's bond, requested Morton to de-
liver to him (Dillon) this bond, and offered to indemnify Mor-
ton against W. T. Cunningham; but Morton refused to deliver
the bond to Dillon, upon his indemnity, unless he (Dillon)
should obtain Morton's receipt from W. T. Cunningham, or
cause it to be delivered up by W. T. Cunningham.

In September, 1887, it was arranged between Morton and
Dillon that the latter should raise and pay or deposit the
$35 36 still due on said judgment, and then enjoin Morton
from delivering up the said bond.   But when, in October, 1887,

Dillon approached Morton with the $35 36 to pay off the judgment, he was met with the information that Morton had collected $35 36 from W. T. Cunningham, and delivered up the said collateral: that W. T. Cunningham was insolvent; that William T. Cunningham was therefore indebted to Dillon for the money paid as his surety, and that Dillon was entitled to be subrogated to all the rights and remedies which Morton held against W. T. Cunningham, and to the said collateral deposited with Morton as aforesaid, and that said Morton, having delivered up this collateral, was bound to Dillon for what could have been realized on it. That said Cunningham and said Glenn, having full notice of the premises, were still bound to Dillon on this bond on which they had paid the said small amount; that the dealings by the said parties with the said bond were in fraud of the rights of Dillon, and void—and prayed that William T. Cunningham be enjoined from disposing of this part, if undisposed of, and Samuel N. Cunningham and T. Henry Glenn be enjoined from paying anything on this bond to William T. Cunningham; that, if the said Samuel N. Cunningham and T. H. Glenn have acquired possession of this bond, they be required to file it, with their answer, and Morton be required to file the receipt which he took back from William T. Cunningham, and the said bond of $500, not yet being due and payable; that the same shall be collected when due and the proceeds paid to Dillon, or, if the said bond, by reason of the acts of said Morton, could not now be collected, then that there be a decree against Morton for the amount of the same, and for general relief, etc. The injunction prayed for was awarded, in accordance with the prayer of the said bill. The bill was demurred to, and the same was overruled; and the answer of Morton was filed, detailing the transactions as aforesaid, and setting up the delay of Dillon in getting an injunction, as suggested, and claiming to have acted conscientiously, and imputing *laches* to Dillon, etc. The facts appearing to be as stated by depositions in the cause, upon de-

cree the circuit court overruled the demurrer of Morton, took the bill for contessed as to the two Cunninghams and Glenn, and decreed that Morton should pay the amount of the collateral bond—delivered up by him, under the stated circumstances, to Cunningham—to Dillon, the surety aforesaid; whereupon Morton appealed to this court.

The error assigned here is to the action of the court in decreeing against Morton the amount of the collateral, instead of decreeing against the Cunninghams and T. Henry Glenn the collection of the bond. There can be no doubt that the surety was entitled to be subrogated to the rights of the creditor as further security for the debt on which the surety is bound, so far as he has paid the debt as surety, and the creditor is bound to hold the collateral so deposited with him for the benefit of the surety, as well as for his own; and he must account to the surety for the value of the property, not only if he parts with it, or surrenders it, without the consent of the surety, or does any affirmative act in violation of the trust upon which he holds it, but also for any negligence or omission to perform any act, whereby the surety's recourse to the fund is prejudiced. Sheld. Subr., § 120, and cases cited; *Id.*, 129, §§ 119, 123. A surety, upon paying the debt, is subrogated to the rights of the creditor in any collateral security which the creditor holds for the payment of the debt. It follows that, if a creditor holding collateral security surrenders it to the principal debtor without the knowledge or consent of the surety on the debt, he thereby discharges him, to the extent of the value of the property surrendered. Jones, Pledges, §§ 513, 515; opinion of Mr. Justice Matthews in *Hampton* v. *Phipps*, 2 Sup. Ct., 612, 624. A surety may recover the value of the collateral, when he has discharged the debt in ignorance of the surrender of the collateral to which he was entitled. Jones, Pledges, § 517. If the principal debtor has himself paid part of the debt and the surety the residue, when once the creditor is fully satisfied, the same principle of equity

which substitutes the surety who has paid the whole debt to the place of the creditor will equally extend and apply to the surety paying a part thereof, to the extent of his payment. *Id.*, § 128, and cases cited. A partial payment is sufficient to establish the surety's right against the principal debtor. It is only the creditor who can insist that the debt shall be paid in full. *Gedye* v. *Matson*, 25 Beav., 310. And when the debt has been fully paid the right of the surety is established to the extent of the payment made by him. The decree of the circuit court appealed from, having been rendered in accordance with the above well-settled principles, is right, and must be affirmed.

DECREE AFFIRMED.