# CIRCUIT COURT OF THE CITY OF NORFOLK

Dollar Tree Stores, Inc.,
and Greenbriar International, Inc.

v.

Crum & Forster
Specialty Insurance Co. *et al.*

December 23, 2015

Case No. CL15-4612

By Judge Mary Jane Hall

This matter came before the Court on demurrers filed by Defendants Crum & Forster Specialty Insurance Co. and Peachtree Playthings, Inc. The parties have thoroughly briefed their respective positions and presented argument before the Court *ore tenus*. The Court has previously ruled on the demurrers to all other counts. The Court took under advisement Crum & Forster's demurrer to Count 3 of the Complaint, pending additional briefing by the parties. For the reasons stated herein, the Court holds that Plaintiffs have adequately alleged a cause of action against Crum & Forster in Count 3. Therefore, the demurrer to Count 3 is overruled.

## *Factual Background*

The present litigation follows a products liability action filed in the United States District Court for the Eastern District of Pennsylvania against Dollar Tree and others. Plaintiff in that action claimed that his daughter choked to death on a piece of a children's coloring set sold by Dollar Tree. He filed a wrongful death complaint against, *inter alia*, Dollar Tree and the manufacturer of the item, Peachtree Playthings, Inc.

The action implicated several insurance policies relevant to the instant litigation, a $1 million policy from Seneca Specialty Insurance Co. naming Peachtree Playthings, Inc., Peachtree Playthings Hong Kong, and Southern States Marketing, Inc. (the "Peachtree Defendants") as insureds ("Seneca Policy"), a $9 million policy from Crum & Forster Specialty Insurance Co. naming the Peachtree Defendants as insureds ("Crum & Forster Policy"), a $1 million policy from Arch Insurance Co. naming Dollar Tree as insured ("Arch Policy"), a $25 million policy from American Guarantee & Liability Insurance Co. naming Dollar Tree as insured ("American Guarantee Policy").

The parties to the products liability action, together with their respective insurers, voluntarily settled the products liability litigation in May 2014 for $4.3 million. In a Memorandum of Understanding memorializing the terms of their agreement, the parties recited that they "agree that the settlement amount is fair [and] reasonable" and that they "reserve all of their rights and claims and defenses." Compl., Ex. A. The parties agreed that jurisdiction over any future litigation concerning the settlement would lie in this Court and in the Norfolk Division of the United States District Court for the Eastern District of Virginia. *Id.*

The parties funded the $4.3 million settlement as follows: Crum & Forster paid $1.3 million on behalf of the Peachtree Defendants; Seneca paid $1 million on behalf of the Peachtree Defendants, thereby exhausting the Seneca Policy; American Guarantee paid $1 million on behalf of Dollar Tree; Arch Insurance paid $750,000 on behalf of Dollar Tree, thereby exhausting the Arch Policy; Dollar Tree paid $250,000.

In this litigation, Plaintiffs contend that Crum & Forster was obligated under the Crum & Forster Policy to insure Dollar Tree for all amounts owed under the settlement. Specifically, Plaintiffs argue that Dollar Tree was an "insured" under the Seneca Policy and thereby a "named insured" under the Crum & Forster Policy. Plaintiffs claim that, under the Crum & Forster Policy, Crum & Forster became an excess insurer for Dollar Tree upon the exhaustion of the policy limits of all "underlying insurance," which it defines as the Seneca Policy. Plaintiffs allege that the Seneca Policy became exhausted when Seneca contributed $1 million toward the settlement on behalf of the Peachtree Defendants. As such, Plaintiffs claim that Crum & Forster became obligated to reimburse Dollar Tree, its "insured," for any loss Dollar Tree incurred in excess of the Seneca Policy. Plaintiffs characterize their payments made in satisfaction of Dollar Tree's $2 million obligation under the settlement agreement as a "loss" under the Crum & Forster Policy such that the Policy obligated Crum & Forster to insure Dollar Tree for this amount.

Plaintiffs further assert that American Guarantee was obligated under its policy to reimburse Dollar Tree for damages in excess of the policy limits of any other insurance available to Dollar Tree. Plaintiffs allege that both the

Arch Policy and the Seneca Policy became exhausted after those insurers paid each of their respective policy limits, but Crum & Forster refused to provide indemnity coverage to Dollar Tree under its Policy. Consequently, Plaintiffs claim American Guarantee became secondarily liable as an excess insurer on Dollar Tree's obligation to pay $2 million toward the settlement. American Guarantee paid $1 million toward satisfying this obligation and here contends that it is subrogated to Dollar Tree's right under the Crum & Forster Policy to indemnification from Crum & Forster for this amount.

Dollar Tree and American Guarantee commenced this action to recover their combined $1.25 million payment by filing a seven-count complaint outlining various theories of recovery. Crum & Forster demurred to the four counts of Plaintiffs' complaint that sought relief against it (Counts I, II, IV, and VII). At a hearing on the demurrers, the Court sustained the demurrer as to Count 1 (declaratory and equitable relief), overruled the demurrer as to Counts 2 (breach of contract) and 7 (declaratory relief), and took the demurrer to Count 3 (equitable subrogation) under advisement.

Only the Peachtree Defendants demurred to Counts 4 through 6, and they withdrew their demurrers after Plaintiffs nonsuited Peachtree Playthings, Inc., from the action.

## Standard of Review

"The purpose of a demurrer is to determine whether a motion for judgment states a cause of action upon which the requested relief may be granted." *Mansfield v. Bernabei*, 284 Va. 116, 120-21, 727 S.E.2d 69, 72 (2012) (quoting *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557, 708 S.E.2d 867, 869 (2011)). Accordingly, in considering a demurrer, a court does not "evaluate and decide the merits of a claim"; rather, the court only considers "the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action." *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)).

In ruling on a demurrer, the court "may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156 (1991). "When a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (citing *Hunter*

*v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918)). Therefore, even though the complaint "may be imperfect, when it is drafted so that [a] defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer." *Id.* (citing *Alexander v. Kuykendall*, 192 Va. 8, 14–15, 63 S.E.2d 746, 749–50 (1951)).

## Discussion

Crum & Forster argues that a party may only assert a claim of equitable subrogation where (1) it has paid another's "entire debt," and (2) it did not make that payment as a "volunteer." Crum & Forster Mem. in Supp. of Dem. at 16 (citing 73 Am. Jur. 2d, *Subrogation*, § 5 (2005)). Here, Crum & Forster contends that Plaintiffs have failed to plead a cause of action for equitable subrogation because (1) American Guarantee made its $1 million payment as a "volunteer," participating voluntarily in the settlement when it was under no obligation to do so, and (2) as Arch and Dollar Tree paid the other half of Crum & Forster's alleged $2 million obligation to Dollar Tree under the Crum & Forster Policy, American Guarantee's $1 million payment did not satisfy the "entire debt" at issue. *Id.* at 16-17.

Subrogation is "the substitution of another person in the place of the creditor to whose rights he succeeds in relation to [a] debt." *Federal Land Bank v. Joynes*, 179 Va. 394, 401, 18 S.E.2d 917, 920 (1942). Equitable subrogation "is subrogation that arises by operation of law," and "is not based on contract or privity of parties, but is 'purely equitable in nature, dependent on the facts and circumstances of each particular case'." *XL Specialty Ins. Co. v. Commonwealth*, 269 Va. 362, 369, 611 S.E.2d 356, 360 (2005) (quoting *Centreville Car Care, Inc. v. North Am. Mortg.*, 263 Va. 339, 345, 559 S.E.2d 870, 872 (2002)). The doctrine of equitable subrogation applies when an individual "pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Federal Land Bank*, 179 Va. at 402, 18 S.E.2d at 920. Under Virginia law, an individual who discharges a debt for which it is secondarily liable is subrogated to any rights the creditor possesses against the party who was primarily liable. In *Thompson v. Miller*, 195 Va. 513, 79 S.E.2d 643 (1954), the Supreme Court of Virginia held that:

> Whenever one person is compelled to pay a debt or discharge an obligation for which he is only secondarily liable, in person or in property, and hence has recourse over against the person or the property primarily liable, for exoneration or contribution, a court of equity will subrogate the person thus secondarily liable to the position of the creditor whom

he has satisfied, as to every lien, preference or other special advantage possessed by the latter at the time of such payment.

195 Va. at 519-20, 79 S.E.2d at 647 (emphasis omitted) (quoting William Minor Lile, *Notes On Equity Jurisprudence* (1921) at 164).

Historically, Virginia courts have liberally applied the doctrine of equitable subrogation. *Federal Land Bank*, 179 Va. at 402, 18 S.E.2d at 920 (citing *Sands' Adm'r v. Durham*, 99 Va. 263, 267, 38 S.E. 145, 146 (1901) ("In no other jurisdiction has the doctrine been . . . more liberally expounded and applied, to meet the exigencies of particular cases, than in Virginia.")). As such claims "are necessarily fact specific," the Supreme Court has noted that "no bright-line rule for the resolution of claims for subrogation can be formulated." *Centreville Car Care*, 263 Va. at 345, 559 S.E.2d at 872. Nonetheless, "several principles or guidelines are uniformly established" under Virginia law that "that assist in the proper analysis of such claims." *Id.* For instance, the right of subrogation "is only enforced on behalf of sureties and others who are required to pay [a debt] in order to protect their own interests, and never in favor of mere volunteers." *Repass v. Moore*, 98 Va. 377, 379, 36 S.E. 474, 475 (1900) (emphasis omitted) (quoting *Clevinger v. Miller*, 68 Va. (27 Gratt.) 740, 741-42 (1876)).

A. *American Guarantee Did Not Act as a "Volunteer."*

In support of its demurrer, Crum & Forster invokes the "voluntary payment" rule, which provides that "a person with full knowledge of the facts [who] voluntarily pays a demand unjustly made upon him . . . is not entitled to recover back the money paid." *Williams v. Consolvo*, 237 Va. 608, 613, 379 S.E.2d 333, 336 (1989) (emphasis omitted) (quoting *Wessel, Duval & Co. v. Winborne & Co.*, 125 Va. 502, 510, 99 S.E. 719, 721 (1919)). Crum & Forster emphasizes that Dollar Tree and American Guarantee entered into the settlement agreement voluntarily, and it thus urges the Court to conclude that Plaintiffs made the payments at issue as "volunteers."

The Supreme Court of Virginia has delineated three classes of potential subrogees:

(1) Individuals "who act in the performance of a legal duty arising either by express agreement or by operation of law."

(2) Individuals "who are not legally bound to pay [the debt], but who might suffer loss if the obligation is not discharged, and who act under the necessity of self-protection."

(3) "[S]trangers who act at the request of a person liable for the debt."

*Richmond v. Hanes*, 203 Va. 102, 108, 122 S.E.2d 895, 900 (1961) (citing *Morgan v. Gollehon*, 153 Va. 246, 249, 149 S.E. 485, 486 (1929)). Members

of the first two classes are generally held to be entitled to subrogation, while subrogation is generally unavailable to members of the third class. *Morgan*, 153 Va. at 249-50, 149 S.E. at 486.

The Complaint alleges that the American Guarantee Policy "is excess of all other insurance," that Crum & Forster was a primary insurer of Dollar Tree's obligation under the settlement, that other insurance policies available to Dollar Tree became exhausted, and that Crum & Forster refused Dollar Tree's demand to indemnify it for the amount it owed in excess of the coverage provided by the Seneca and Arch Policies. Compl. ¶¶ 80, 85-86, 95, 108, 111-12. Accepting these pleaded facts as true, the Court finds that American Guarantee has adequately alleged that it had a duty under its policy to satisfy Dollar Tree's outstanding obligation under the settlement agreement and thus made the $1 million payment "in the performance of a legal duty" or because it "might [have] suffer[ed] loss if the obligation [was] not discharged", and thus "act[ed] under the necessity of self-protection." American Guarantee has, therefore, alleged that it falls within either of the two classes eligible for equitable subrogation under *Morgan*, 153 Va. at 249-50, 149 S.E. at 486.

Further, Crum & Forster's reliance upon the voluntary payment rule is misplaced. The cited authorities, while binding precedent, are not insurance cases and shed no light on whether an insurer who pays money to settle a claim against its insured makes that payment as a "volunteer." Crum & Forster's argument would potentially deprive any excess insurer that voluntarily settles a lawsuit against its insured from a means to obtain indemnification from a primary insurer via equitable subrogation. Such an outcome would be inconsistent with Supreme Court decisions holding that an insurer who settles a claim on behalf of its insured is subrogated to its insured's right to seek contribution from joint tortfeasors. *See, e.g., Nationwide Mut. Ins. Co. v. Minnifield*, 213 Va. 797, 798, 196 S.E.2d 75, 76 (1973); *Nationwide Mut. Ins. Co. v. Jewel Tea Co.*, 202 Va. 527, 531, 118 S.E.2d 646, 648 (1961).

In addition, the Supreme Court has approved actions in which one insurer voluntarily settled a claim against its insured and subsequently sought reimbursement from another insurer for the amount it paid. *See, e.g., United States Auto. Ass'n v. Travelers Indem. Co.*, 240 Va. 214, 217-19, 396 S.E.2d 658, 659-61 (1990); *Continental Ins. Co. v. State Farm Fire & Cas. Co.*, 238 Va. 209, 211-12, 380 S.E.2d 661, 662-63 (1989); *Aetna Cas. & Sur. Co. v. National Union Fire Ins. Co.*, 233 Va. 49, 52-53, 353 S.E.2d 894, 896-97 (1987); *Hardware Mut. Cas. Co. v. General Accident Fire & Life Assurance Corp.*, 212 Va. 780, 781-84, 188 S.E.2d 218, 220-21 (1972). The definition of "volunteer" that Crum & Forster urges this Court to adopt would be inconsistent with this relevant body of precedent.

Finally, as Plaintiffs note, other jurisdictions have held that an excess insurer is not a "volunteer" for subrogation purposes under similar facts.

*See, e.g. Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 256 (5th Cir. 2011) (interpreting Texas law to provide that "an excess insurer's payment to settle a suit against the insured has been said to be presumptively involuntary for subrogation purposes"); *Weir v. Federal Ins. Co.*, 811 F.2d 1387, 1395 (10th Cir. 1987) (holding that, when an insurer seeks to recover a sum it paid to its insured from a third party, "[a] payment is not voluntary if it is made with a reasonable or good faith belief in an obligation or personal interest in making that payment"); *Star Ins. Co. v. Continental Res., Inc.*, 89 F. Supp. 3d 1015, 1032 (D. N.D. 2015); *Galen Health Care v. American Cas. Co.*, 913 F. Supp. 1525, 1531 (M.D. Fla. 1996) (holding that insurers "who pay a debt in self-protection, to avoid suffering a loss if the obligation is not discharged, are exercising their right of subrogation and are not volunteers"); *Allstate Ins. Co. v. Gip*, 797 F. Supp. 763, 765 (N.D. Cal. 1992); *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 255 So. 2d 667, 669 (Miss. 1971); *Insurance Co. of N. Am. v. Travelers Ins. Co.*, 118 Ohio App. 3d 302, 314, 692 N.E.2d 1028, 1035 (1997) ("an insurer that provides secondary coverage is not a mere volunteer without the right of recovery from the primary insurer"); *State Farm Mut. Auto. Ins. Co. v. Northwest Nat'l Ins. Co.*, 912 P.2d 983, 986 (Utah 1996); *Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 145 Wash. App. 765, 775-76, 189 P.3d 195, 200-01 (2008). While these decisions are not binding upon the Court, their basic rationale appears consonant with Virginia jurisprudence and are thus persuasive.

In sum, the broad definition of "volunteer" that Crum & Forster asks the Court to adopt is inconsistent with mandatory Virginia precedent and contrary to persuasive foreign authority. Accordingly, the Court holds that American Guarantee's payment to settle a significant claim against its insured was not made as a "volunteer;" thus, it is not barred from asserting a claim of equitable subrogation on that ground.

B. *American Guarantee's Alleged Failure To Pay Dollar Tree's "Entire Debt."*

Crum & Forster contends that the doctrine of equitable subrogation only applies where the party seeking subrogation paid "the entire debt" owed to the alleged subrogor. Crum & Forster Mem. in Supp. of Dem. at 16 (citing 73 Am. Jur. 2d, *Subrogation*, § 5 (2005)). Crum & Forster specifically argues that Dollar Tree's obligation under the settlement agreement totaled $2 million and notes that American Guarantee only paid $1 million of that sum, while Dollar Tree contributed $250,000 and Arch paid $750,000. Crum & Forster thus claims that American Guarantee cannot be subrogated to any right Dollar Tree possessed against Crum & Forster under the Crum & Forster Policy because American Guarantee did not pay the entire $2 million obligation.

Under Virginia law, once an obligation is fully satisfied, a secondary obligor who partially satisfied that debt is subrogated to the obligee's rights

against the debtor to the extent of its contribution. In *Morton v. Dillon*, 90 Va. 592, 19 S.E. 654 (1894), the Supreme Court held:

> If the principal debtor has himself paid part of the debt and the surety the residue, when once the creditor is fully satisfied, the same principle of equity which substitutes the surety who has paid the whole debt to the place of the creditor will equally extend and apply to the surety paying a part thereof, to the extent of his payment. A partial payment is sufficient to establish the surety's right against the principal debtor. It is only the creditor who can insist that the debt shall be paid in full. And, when the debt has been fully paid, the right of the surety is established to the extent of the payment made by him.

90 Va. at 595-96, 19 S.E. at 655-56 (internal citations omitted).

In this case, Dollar Tree and its insurers have satisfied the "entire debt" Plaintiffs allege that Crum & Forster owes to Dollar Tree pursuant to the Crum & Forster Policy. American Guarantee contributed $1 million toward satisfying this obligation. Consequently, it may be subrogated to Dollar Tree's rights against Crum & Forster "to the extent of [its] payment."

Crum & Forster misapprehends the "entire debt" requirement to which it cites. The common law prohibits the subrogation of a secondary obligor prior to the complete satisfaction of the debt because:

> [I]f the secondary obligor were subrogated to rights of the obligee before complete satisfaction of the underlying obligation . . . the rights obtained by the secondary obligor through subrogation would compete with the remaining rights of the obligee pursuant to the underlying obligation, with the result that the remaining recovery of the obligee on account of the underlying obligation could be diminished.

Restatement (Third) of Suretyship & Guaranty, § 27, cmt. b (1996). It is true that American Guarantee did not pay Dollar Tree's entire contribution to the settlement: Dollar Tree itself paid $250,000 that it now seeks to recover from Crum & Forster. According to the rationale of the Restatement, American Guarantee should not be permitted subrogation against Crum & Forster *before* Dollar Tree has been fully paid, because American Guarantee's pursuit of Crum & Forster might interfere with Dollar Tree's efforts to obtain its own recovery.

In Count III, however, American Guarantee and Dollar Tree are jointly seeking reimbursement against Crum & Forster for the entire amount of their combined contribution to the settlement. There is no possibility that a recovery by American Guarantee would interfere with Dollar Tree's rights,

because any award under Count III would be in favor of both plaintiffs. The Court, therefore, concludes that Dollar Tree's rights will not be prejudiced by American Guarantee's equitable subrogation, and the concerns underlying the "entire debt" requirement have no application here.

## C. *Dollar Tree's Status as an "Insured" under the Seneca Policy*

Crum & Forster argues that Dollar Tree does not qualify as an "insured" under the terms of the Seneca Policy. Thus, it is likewise not an "insured" under the Crum & Forster Policy, which defines its "insured" as any insured under the Seneca Policy.

Crum & Forster's argument centers on language establishing who qualifies as an "additional insured" under the Seneca Policy entitled "Additional Insured – Vendors." This provision states that the section defining who is an "insured" under the Policy "is amended to include as an additional insured any person(s) or organization(s) . . . shown in the Schedule, but only with respect to 'bodily injury' . . . arising out of 'your products' shown in the Schedule. . . ." The parties do not dispute that Dollar Tree is a "person" or "organization" under this provision, but Crum & Forster alleges that the section marked "your products" in the Schedule is blank. Crum & Forster thus asserts Dollar Tree is not an "additional insured" under the Seneca Policy as to the Peachtree coloring set because that product was not listed in the Schedule.

The Court notes that Seneca itself made no such contention. The Complaint alleges that Seneca accepted Dollar Tree's defense of the products liability action and contributed its policy limit to the settlement. This allegation seems to contradict the conclusion that Dollar Tree was not insured under the Seneca Policy.

Nonetheless, this argument about the blank "your products" section was raised for the first time in Crum & Forester's supplemental memorandum, filed December 22, 2015. Plaintiff has not addressed this argument in the many pages of briefs that the Court has reviewed. Plaintiffs did plead in the complaint at paragraphs 70 and 71 an adequate allegation that "your product" reference includes the defective coloring set. This allegation suffices to survive demurrer on this basis.

## Conclusion

Under Virginia law, courts are to apply the doctrine of equitable subrogation "liberally . . . to meet the exigencies of particular cases." The Court finds that Plaintiffs have pleaded facts sufficient to state a cause of action for equitable subrogation. Accordingly, Crum & Forster's Demurrer to Count 3 is overruled.

Pursuant to Rule 1:13 of the Rules of the Supreme Court, endorsement by the parties is waived. Counsel are directed to submit their objections in

writing within ten days from the date of this Order. The Clerk's Office is directed to email certified copies of this Order to all counsel of record. It is so ordered.